**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOEY TATE, on behalf of himself and all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>PROGRESSIVE FINANCE HOLDINGS, LLC,<br><br>  Defendant. | Case No. 2:17-cv-01589-ODW (ASx)<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISS PROCEEDINGS [15]** |

## I. INTRODUCTION

On June 2, 2017, Defendant Progressive Finance Holdings, LLC moved to compel arbitration, and to either dismiss or stay these proceedings pending the outcome of arbitration. (Mot., ECF No. 15.) Plaintiff Joey Tate opposes the Motion, and claims that the arbitration clause at issue does not encompass the dispute alleged in his Complaint. (Opp'n, ECF No. 18.) Tate brings two causes of action based on Progressive's allegedly illegal debt collection practices, which utilized an automatic telephone dialing system. (*See generally* Compl., ECF No. 1.)

After briefing closed on this Motion, Tate objected because Progressive included additional evidence in its Reply brief, and moved the Court for leave to file a sur-reply. (ECF No. 21.) The Court granted Tate's Motion for Leave to File Sur-Reply, and considered Tate's Sur-Reply in reaching its conclusion here. (ECF No.

24.) For the reasons discussed below, the Court **GRANTS** Progressive's Motion to Compel Arbitration, and **DISMISSES** this action.[1]

## II. FACTUAL BACKGROUND

Tate's Complaint lacks any factual detail, and alleges, generally, that: 1) "Defendant placed calls to plaintiff's Number in an attempt to collect a debt" (Compl. ¶ 12); 2) the calls "were placed using an automatic telephone dialing system ("ATDS") and/or by using an artificial or pre[-]recorded voice ("Robocalls")" (*Id.* ¶ 13); 3) Progressive left messages on Tate's answering system; and 4) that all of this was done without Tate's consent, and "at an excessive and harassing rate." (*Id.* ¶ 14–16.) Tate does not allege what the debt at issue relates to, other than to allege that it "arises from a transaction in which property, services or money was acquired on credit primarily for personal, family or household purposes...." (*Id.* ¶ 9.)

Progressive contends the debt arises out of a Lease with Purchase Rights between Tate and Progressive dated August 8, 2014 (the "August Lease"), under which Tate agreed to lease a laptop. (Mot. 1; Decl. of Trevor Thatcher ("Thatcher Decl.") ¶ 3, Ex. A, ECF No. 15-1.) The first paragraph of the August Lease provides:

> **THIS LEASE CONTAINS AN ARBITRATION PROVISION (SEE ¶13 OF THE ADDITIONAL LEASE TERMS). UNLESS YOU PROMPTLY REJECT THE ARBITRATION PROVISION (SEE ¶13(a) OF THE ADDITIONAL LEASE TERMS), THE ARBITRATION PROVISION WILL HAVE A SUBSTANTIAL EFFECT ON YOUR RIGHTS IN THE EVENT OF A DISPUTE, INCLUDING YOUR RIGHT TO BRING OR PARTICIPATE IN A CLASS PROCEEDING.**

(Thatcher Decl., Ex. A at 2) (emphasis in original); *see also id.*, Ex. A, § 13(f)). The August Lease also provided Tate thirty days to reject the arbitration clause. (*Id.*, Ex.

---

[1] After carefully considering the papers filed with respect to this Motion the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

A, § 13(a).) It also explained that "this is the only way you can reject arbitration[,]" and that rejecting the arbitration provision would "not affect your right to this Lease or the terms of this Lease apart than this Arbitration Provision." (*Id.*) Tate did not reject the arbitration clause. (Thatcher Decl. ¶¶ 4–5.)

Section 13 of the August Lease provides that Tate and Progressive "agree that either party may elect to arbitrate or require arbitration of any Claim under this Arbitration provision." (*Id.*, Ex. A, § 13(a)(i).) In the August Lease, "Claim" is defined as:

> any claim, dispute or controversy between you and us (including any Related Party) that arises from or relates in any way to this Lease or the Property (including any amendment, modification or extension of this Lease); *any prior lease between you and us and/or the property subject to such prior lease; any of our marketing, advertising, solicitations and conduct relating to this Lease, the Property and/or a prior lease and related property; our collection of any amounts you owe*; or our disclosure of or failure to protect any information about you. "Claim" is to be given the broadest reasonable meaning and includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims, and claims based on constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, torts, negligence, fraud or other intentional wrongs) and equity. It includes disputes that seek relief of any type, including damages and/or injunctive, declaratory or other equitable relief.

(*Id.*, Ex. A, § 13(a)(ii)) (emphasis added).

The August Lease also provides that Utah law shall govern the enforceability of the arbitration provision. (*Id.*, Ex. A, § 13(i)).

In his Opposition, Tate attaches correspondence between his counsel and Progressive's counsel wherein Tate's counsel asked for details regarding the purpose

of Progressive's telephone calls, which are the subject of Tate's Complaint.[2] (Decl. of Trinette G. Kent ("Kent Decl.") ¶¶ 3–4, Ex. A, ECF No. 18-1, 18-2.) As part of this exchange, Progressive's counsel indicated that Tate may have also applied for another lease at a later date. (*Id.*) In its Reply, Progressive submitted a supplemental declaration from Trevor Thatcher, Vice-President of Operations of Prog Leasing LLC, who declared that Tate has not entered into any other leases with Progressive. (Suppl. Thatcher Decl. ¶ 4, ECF No. 20-1.) And, to the extent that Tate had, it would have contained the same arbitration clause found in the August Lease. (*Id.* ¶ 5.)

The Court provided Tate the opportunity to respond to these allegations when it granted Tate's Motion for Leave to File Sur-Reply. (ECF No. 24.) Tate did not provide any evidence, or otherwise rebut Thatcher's Supplemental Declaration. He did not provide his own declaration indicating that he actually did enter into a second lease, which might be the subject of Progressive's debt collection activities, or submit any evidence that the calls he allegedly received relate to anything other than the laptop, which was the subject of the August Lease. (*See* Sur-Reply, ECF No. 25.) Instead, Tate regurgitated the arguments from his Opposition, and contended that because we do not know the subject of the calls, we cannot determine whether Tate's claims are included in the broad arbitration provision of the August Lease. (*Id.*)

### III. LEGAL STANDARD

The Federal Arbitration Act is meant "to ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal citations and quotations omitted). Section 2 of the FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Id.* at 339 (quotations omitted).

---

[2] As Progressive notes in its Reply, the contents of these emails are hearsay, and do not fall within any exception, as presented by Tate. The Court cites these emails to explain the parties' arguments, and, as detailed below, does not find them determinative of the issue here—whether to arbitrate Tate's claim.

The Court may not review the merits of this dispute. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). When determining whether to compel arbitration, district courts are limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does (2) whether the agreement encompasses the dispute at issue." *Id.* (internal citations and quotations omitted). "When deciding whether the parties agreed to arbitrate a certain matter…, courts generally…should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citations omitted). Any ambiguities regarding the scope of arbitration provisions are interpreted in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995). The party opposing arbitration bears the burden of establishing that the arbitration provision is invalid or does not encompass the claims at issue. *See Green Tree Fin. Corp. Ala. v. McMahon*, 531 U.S. 79, 92 (2000); *Hendricks v. AT&T Mobility, LLC*, 823 F. Supp. 2d 1015, 1019 (N.D. Cal. 2011). Where a valid arbitration agreement exists, the Court must enforce it. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

## IV. DISCUSSION

Tate does not dispute that he signed the August Lease, which contains an arbitration provision, or claim that the provision is unconscionable. He opposes Progressive's Motion to Compel Arbitration on the grounds that the issues in this case are not within the scope of the arbitration clause in the August Lease. (Opp'n 6.) Accordingly, the Court addresses the second prong of the Ninth Circuit's required analysis—whether the claims are encompassed within the arbitration agreement.[3] *See Cox*, 533 F.3d at 1119. The Court also addresses Progressive's request to dismiss, or stay, this action.

---

[3] Since Tate did not dispute the enforceability of the August Lease, he did not address the clause in the August Lease requiring the application of Utah law regarding enforceability. Because the choice-of-law clause is not at issue, as framed by the parties' briefing, the Court declines to address it.

## A. Tate's Claim Is Encompassed by the Broad Arbitration Clause

In opposing Progressive's Motion, Tate relies on *Salsbery v. Verizon Wireless (VAW), LLC*, where the court denied the defendant's motion to compel arbitration in a case involving similar claims under the Telephone Consumer Protection Act ("TCPA") and Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"). No. 2:13-cv-26419, 2014 WL 3876635, at *6 (S.D. W. Va. Aug. 7, 2014). The similarities stop there. In *Salsbery*, the court specifically held the arbitration clause was narrow, and thus enjoyed "more latitude to determine whether the dispute '[fell] within the purview of the clause' or involve[d] an issue that [wa]s collateral to the main agreement." *Id.* at *5 (citing and quoting *Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924, 927 (2d Cir. 1990)). Here, the arbitration clause in the August Lease is broad, and encompasses "any claim, dispute or controversy between you and us (including any Related Party) that arises from or relates in any way to this Lease or the Property (including any amendment, modification or extension of this Lease)…." (Thatcher Decl. ¶ 3, Ex. A, § 13(a)(ii)); *see also Koyoc v. Progress Fin. Co.*, No. CV 13–09165–RSWL (AGRx), 2014 WL 1878903, at *5 (C.D. Cal. May 9, 2014) (citing *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1208 (S.D. Cal. 2013) (interpreting similar language in Progressive arbitration clause broadly)). "Where the arbitration provision is broad, there is a heightened presumption in favor of arbitration such that the party resisting arbitration must show 'forceful evidence of a purpose to exclude the claim from arbitration....'" *Koyoc*, 2014 WL 1878903, at *2 (quoting *AT&T Techs, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). Tate provides no such "forceful evidence," and only speculates as to why the arbitration clause does not encompass his claims.

Also distinguishable from *Salsbery* is Tate's failure to identify with any sort of specificity the subject of the calls that form the basis of his Complaint. In *Salsbery*, the "dispute arose after the plaintiff refused to pay for services he claim[ed] were not included in the original contract" that contained the arbitration clause. *Salsbery*, 2014

WL 3876635, at *4. Here, Tate alleges, without any evidence other than an email from defense counsel, that the calls may have related to a second lease, which Thatcher explains does not exist in Progressive's business records. (Suppl. Thatcher Decl. ¶¶ 4–5.) Thatcher also explains that, to the extent Tate did enter into a second lease, it would have contained the same arbitration clause. (*Id.*) Tate does not provide any evidence that he entered into a second lease, or otherwise counter Progressive's arguments, and fails to meet his burden to avoid arbitration. *Hendricks*, 823 F. Supp. 2d at 1019. Tate's argument that his claims are not encompassed within the arbitration agreement are based on speculation as to why Progressive was calling Tate; whereas Progressive provides the August Lease, which contains a broad arbitration clause, and testimony from its Vice President that Tate did not enter into any other leases, which Tate advances as the only other potential basis for the telephone calls that underpin his Complaint.

Tate also cites a series of cases for the proposition that he should be entitled to conduct discovery to determine whether the arbitration clause in the August Lease encompasses his claims. (Opp'n 5.) The FAA permits limited pre-arbitration discovery in circumstances where the opposing party claims the agreement to arbitrate is unconscionable. *See Loewen v. Lyft, Inc.*, No. 15-cv-01159-EDL, 2015 WL 12780465, at *3 (N.D. Cal. June 12, 2015) (emphasis in original) (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999)); *see also Hodson v. DirecTV, LLC*, No. C 12–02827 JSW, 2012 WL 5464615, at *8 (N.D. Cal. Nov. 8, 2012) (denying request for pre-arbitration discovery, and addressing California statute providing for pre-arbitration discovery not raised by plaintiff here); *McArdle v. AT&T Mobility LLC*, No. C 09–1117 CW (MEJ), 2013 WL 1190277, at *2 (N.D. Cal. Mar. 21, 2013). Here, Tate does not claim the arbitration provision is unconscionable, and does not provide any evidence that his claims relate to anything other than the laptop he leased pursuant to the August Lease, which includes a broad arbitration clause. Taking into account the FAA's presumption of arbitration in cases including a broad

arbitration clause, the Court finds that Tate has not met his burden in opposing Progressive's Motion to Compel Arbitration. *Hendricks*, 823 F. Supp. 2d at 1019. Accordingly, the Court **GRANTS** Progressive's Motion to Compel Arbitration.

### B. Should Tate Stay, or Should He Go?

"Under the Federal Arbitration Act (FAA), if a federal district court determines that a suit is subject to an arbitration agreement, it shall, on application of a party, stay the litigation pending arbitration." *Walker v. BuildDirect.com Tech., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013); 9 U.S.C. § 3. In the Ninth Circuit, the district court has discretion to dismiss a party's complaint where the court finds that the arbitration clause ensnares all of the party's claims. *See Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) ("9 U.S.C. section 3 gives a court authority, upon application by one of the parties, to grant a stay pending compliance with the contractual arbitration clause.... [T]he provision [does not, however,] limit the court's authority to grant a dismissal ...."); *see also Azoulai v. La Porta*, No. CV 15–06083–MWF–PLA, 2016 WL 9045852, at *5 (C.D. Cal. Jan. 25, 2016) (dismissing action after compelling arbitration).

Here, the Court finds that Tate's claims, as plead and represented in his Opposition, fall within the arbitration clause of the August Lease. "To require arbitration, [Tate's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula, Inc.*, 175 F.3d at 721. Tate alleges claims under the TCPA and Rosenthal Act, and alleges that he "is a natural person allegedly obligated to pay a debt asserted to be owed to Defendant." (Compl. ¶ 8.) He also alleges that Progressive "placed calls to Plaintiff's Number in an attempt to collect a debt." (*Id.* ¶ 9.) Tate provides no explanation as to what debt Progressive was attempting to collect, aside from the debt incurred when he leased a laptop pursuant to the August Lease. His only theory—that there was a second "attempted lease"—does not explain how he would be obliged to pay a debt to Progressive aside from the one he incurred

8

from the August Lease. Progressive submits evidence that Tate never entered into a second lease, and Tate fails to provide any argument or evidence to the contrary. The arguments and facts presented to the Court all indicate that Tate's claims fall directly within the August Lease's arbitration clause, which encompasses:

> any claim, dispute or controversy between [him] and [Progressive]…that arises from or relates in any way to [the August Lease] (including any amendment, modification or extension of this Lease); any prior lease between you and us and/or the property subject to such prior lease; any of our marketing, advertising, solicitations and conduct relating to this Lease, the Property and/or a prior lease and related property; our collection of any amounts you owe….

(Thatcher Decl. ¶ 3, Ex. A, § 13(a)(ii).) Accordingly, the Court exercises its discretion, and **DISMISSES** this action, so that the parties may arbitrate. *See Sparling*, 864 F.2d at 638.

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Progressive's Motion to Compel Arbitration (ECF No. 15), and **DISMISSES** this action.

**IT IS SO ORDERED.**

October 24, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**